# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL GLAUB** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1298** |
| **BURL CAIN, WARDEN** | **SECTION "R"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. The case was recently reassigned to me. Record Doc. No. 7. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Michael Glaub, is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] Glaub was indicted by a grand jury in Jefferson Parish on March 20, 2008, and charged with the second degree murder of Kenneth Musgrove.[3] The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> At trial, Timothy Radecker and Brandon Jensen testified that they were with the victim, Kenneth Musgrove, on November 26, 2007. They went with Mr. Musgrove to defendant's house to pick up the money Mr. Musgrove claimed defendant owed him for a broken window on Mr. Musgrove's truck. Mr. Radecker testified that Mr. Musgrove and defendant had previously argued regarding an incident in which the window of Mr. Musgrove's truck was broken and that, in a fight between Mr. Musgrove and defendant, Mr. Musgrove had punched defendant in the face, giving him a broken nose and swollen eyes. . . .
> When the three men arrived at defendant's house, Mr. Musgrove exited the truck. Defendant was standing outside. Mr. Musgrove and defendant argued briefly. Mr. Radecker testified that when defendant suddenly walked inside, Mr. Musgrove turned around and started to walk back around the front of his truck. At that point, defendant came out of the house and started shooting. Mr. Radecker recalled defendant firing eight to ten shots, and he testified that after defendant shot Mr. Musgrove, he looked at Mr. Radecker and Mr. Jensen and said "Ya'll want some too?" Mr. Radecker testified that Mr. Musgrove's back was turned toward defendant when he was shot and that no one in Mr. Musgrove's truck had a weapon.
> Mr. Jensen's testimony was similar to that offered by Mr. Radecker. . . .
> Brandon LeLeaux testified that, while he and several others were at his house on the day of the shooting, he witnessed Mr. Musgrove speaking to defendant on the telephone. Following this conversation, Mr. LeLeaux spoke with defendant on the telephone and warned him to stay inside because he knew that Mr. Musgrove was going to defendant's house. Shortly thereafter, Mr. Musgrove, Mr. Radecker and

---

[2]Rec. Doc. No. 1.

[3]Rec. Doc. No. 1-1, p.1; Rec. Doc. No. 8, p.1; Rec. Doc. No; State v. Glaub, 66 So.3d 1170, 1171 (La. App. 5th Cir. 2011).

Mr. Jensen left Mr. LeLeaux's home. When Mr. LeLeaux arrived at defendant's house a short while later, Mr. Musgrove was dead.

Chantel Dufrene testified for the defense. She stated that Brandon LeLeaux told her that a weapon was removed from the deceased's body after he was shot. Ms. Dufrene was not at the scene at the time of the shooting and did not contact the police regarding this information. Mr. Radecker, Mr. Jensen, and Mr. LeLeaux each testified that they did not see anyone remove a weapon from the deceased's body. Two of defendant's neighbors, Brooke Holeton and Marlene Heintz, both testified that they observed the scene from their houses and did not see anyone remove a weapon from the deceased's body.

Dr. Susan Garcia performed the autopsy on Kenneth Musgrove. She testified at trial that the cause of death was multiple gunshot wounds, primarily to the victim's back and side. . . . Dr. Garcia opined that "at some point in time, the decedent's back was facing the firearm at the time of discharge." The toxicology report revealed the presence of several drugs in the victim's system.

Defendant testified at trial about the events leading up to, and surrounding, the shooting. A couple of nights before the shooting, he and Mr. Musgrove went to Boomtown Casino in Mr. Musgrove's truck. When defendant ran out of money, he asked Mr. Musgrove for his keys so he could sleep in the truck. When Mr. Musgrove returned and was unable to rouse defendant, he broke the window of his truck and, when defendant woke up, Mr. Musgrove told defendant "[y]ou know you're going to have to pay for my window." Defendant replied that he was not going to pay for the window because Mr. Musgrove broke it. In response, Mr. Musgrove stated "well when we get back to Avondale, we're going to fight."

Defendant testified that he and Mr. Musgrove stopped to pick up Mr. Radecker on their way to Mr. LeLeaux's house, where he and Mr. Musgrove engaged in a physical altercation in which Mr. Musgrove broke defendant's nose. During the fight, Mr. Musgrove retrieved a trailer hitch from the back of his truck and broke one of defendant's car windows. Defendant further testified that he and Mr. Musgrove argued again later at his house, but the dispute was resolved when he agreed to pay Mr. Musgrove for the window once he got a job.

Later that day, on his way home from the store, defendant passed by Mr. LeLeaux's house, where he saw Mr. LeLeaux, Mr. Musgrove, Mr. Jensen and Mr. Carter. Defendant did not stop and went straight home. Shortly thereafter, defendant received a call from Mr. Carter, who asked why defendant did not stop at Mr. LeLeaux's house. Mr. LeLeaux spoke with defendant and warned him that Mr. Musgrove was on his way to defendant's house. After speaking with Mr. LeLeaux, defendant retrieved his stepfather's gun.

Defendant testified that when Mr. Musgrove arrived, he was "acting violent" and said if defendant would not fight, he would drag defendant out of his house. Defendant told Mr. Musgrove that he did not want any trouble. Mr. Musgrove stopped, turned around, and walked back to his vehicle. Defendant testified that it appeared to him that Mr. Musgrove was retrieving a weapon. When Mr. Musgrove

3

turned back around, defendant reached inside, grabbed the gun, and shot Mr. Musgrove. Contrary to the testimony offered by Mr. Radecker and Mr. Jensen, defendant claimed that Mr. Musgrove was coming toward him when he fired the first shot.

    When questioned about the shooting on cross-examination, defendant admitted that the deceased had never threatened him with a gun and that, although he assumed the deceased was returning to his vehicle to retrieve a weapon, he did not see a weapon in the deceased's hands when he began shooting. Defendant further admitted that, even though he felt that he had to shoot the deceased, he could have called 911 when the deceased arrived at his house or he could have closed the door. Defendant also admitted that, when he shot the deceased, he fired every bullet in the gun and reloaded the weapon when he was finished. After reloading the weapon, defendant could have shot Mr. Radecker and Mr. Jensen, but he stated that he did not feel any threat from them. Defendant then called the police.

State v. Glaub, 66 So.3d 1170, 1172-74 (La. App. 5th Cir. 2011).

Glaub was tried before a jury on November 18 through 20, 2008, and was found guilty of the lesser included offense of manslaughter.[4] The state trial court sentenced Glaub on February 13, 2009, to serve 40 years in prison at hard labor.[5] That same day, the State filed a multiple offender bill.[6] On August 7, 2009, the court adjudicated Glaub to be a second offender, and resentenced him as a multiple offender to serve 80 years in prison without benefit of parole, probation, or suspension of sentence.[7]

On appeal to the Louisiana Fifth Circuit Court of Appeal, Glaub's counsel raised the following grounds for relief: (1) The State failed to prove beyond a reasonable doubt

---

[4]State v. Glaub, 66 So.3d at 1171-72; Rec. Doc. No. 1-1, p.1; Rec. Doc. No. 8, p.1.

[5]State v. Glaub, 66 So.3d at 1171; Rec. Doc. No. 1-1, p.1; Rec. Doc. No. 8, p. 1-2.

[6]State v. Glaub, 66 So.3d at 1171; Rec. Doc. No. 1-1, p. 1; Rec. Doc. No. 8, p. 2.

[7]State v. Glaub, 66 So.3d at 1172; Rec. Doc. No. 1-1, p. 2; Rec. Doc. No. 8, p. 2.

4

that Glaub did not act in self-defense, and the evidence was insufficient to support the verdict. (2) The trial court erred in imposing the maximum sentence under the habitual offender laws. On May 24, 2011, the Louisiana Fifth Circuit affirmed the conviction and sentence, finding no merit in either claim.[8] The appeal court also remanded the matter with instructions for the trial court to consider Glaub's motion for new trial.

Glaub's conviction became final 30 days later, on June 23, 2011, because he did not seek rehearing or file for review in the Louisiana Supreme Court. Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

On December 16, 2011, the state trial court denied Glaub's motion for new trial and his motion to reconsider the sentence.[9] The record does not reflect that Glaub sought review of this ruling.[10]

## II. FEDERAL HABEAS PETITION

On May 17, 2012, the clerk of this court filed Glaub's petition for federal habeas corpus relief in which he raises the following grounds for relief:[11] (1) The State failed

---

[8]State v. Glaub, 66 So.3d at 1170, 1180.

[9]Rec. Doc. No. 8, p.2.

[10]See Rec. Doc. No. 1, p.4-6, indicating Glaub did not seek further review.

[11]Rec. Doc. No. 1-1, pp. 2-3.

to disprove self-defense, and the evidence was insufficient to support the verdict of manslaughter. (2) Glaub received ineffective assistance of counsel during the pretrial investigation and trial when his counsel failed to (a) convey the prior incidents with the victim in presenting self-defense and (b) object to the sentencing.

The State filed a response in opposition to Glaub's petition conceding that it was timely filed.[12] The State argues, however, that Glaub has failed to exhaust state court remedies, because he has failed to seek review of any claims in the Louisiana Supreme Court.

III. GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[13] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore

---

[12]Rec. Doc. No. 8.

[13]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Glaub's petition, which, for reasons discussed below, is deemed filed in this federal court on April 23, 2012.[14]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State alleges that Glaub has failed to exhaust state court remedies, and the record contains no indication that Glaub has raised claims or filed anything in the Louisiana Supreme Court. Thus, I find that Glaub's petition should be dismissed without prejudice for failure to exhaust state court remedies.

---

[14] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for statute of limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Glaub's petition was filed by the clerk of this court on May 17, 2012, when the filing fee was received. Glaub's signature on his memorandum in support of the petition was dated April 23, 2012. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing. The fact that he paid the filing fee later does not alter the application of the federal mailbox rule to his pro se petition. See Cousin, 310 F.3d at 843 (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

IV.     EXHAUSTION OF STATE COURT REMEDIES

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the

8

petitioner presents <u>new legal theories</u> or <u>new factual claims</u> in his federal application." (emphasis added) <u>Id.</u> (citing <u>Nobles</u>, 127 F.3d at 420). It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the Louisiana Supreme Court. <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

Thus, to have exhausted his claims in state court, Glaub must have fairly presented the same claims and legal theories he urges in this federal court to the state courts <u>through to the Louisiana Supreme Court</u> in a procedurally proper manner and have given that court, and the state courts below, a full opportunity to address those claims. As noted above, the record reflects that Glaub has failed to provide the Louisiana Supreme Court a full and proper review of his claims. Glaub has not filed any pleadings with the Louisiana Supreme Court related to this conviction and sentence. Glaub concedes his failure to exhaust in his own pleadings.[15] In addition, a member of my staff verified this by telephone with the office of the clerk of the Louisiana Supreme Court and confirmed that Glaub has filed no pleadings with that court.

---

[15] <u>See</u> Rec. Doc. No. 1-1, p.2, indicating that Glaub did not seek review in the Louisiana Supreme Court after direct appeal; and Rec. Doc. No. 1, p.4-6, indicating Glaub did not seek further review of the state trial court's ruling..

The record discloses no good cause for Glaub's failure to exhaust these claims, and this court can find none. See Rhines v. Weber, 544 U.S. 269, 278 (2005). Having shown no good cause for his failure to exhaust, this petition must be dismissed without prejudice to allow Glaub to exhaust available state court remedies. Pliler v. Ford, 542 U.S. 225, 233 (2004) (quoting Rose, 455 U.S. at 510); Whitehead, 157 F.3d at 387.

In addition, I recognize that Glaub has requested that, because he has post-conviction remedies he must exhaust, this petition be held in abeyance while he pursues exhaustion.[16] The United States Supreme Court has held that stay-and-abeyance is an extraordinary remedy not to be made readily available to a habeas petitioners who bring mixed petitions, containing both exhausted and unexhausted claims. Pliler v. Ford, 542 U.S. 225, 231 (2004). Instead, in Pliler, the Court reiterated its long-standing directive that a mixed petition be dismissed without prejudice to allow for complete exhaustion.

Glaub has not presented a mixed petition to this court; instead, he brought this federal petition without even attempting to complete exhaustion for any his claims. As noted above, Glaub has failed to make any effort to pursue review in the Louisiana Supreme Court, although he recognizes that he is required to do so.[17] Glaub has failed to make any showing of diligence required to attain a stay. Pliler, 543 U.S. at 233.

---

[16]Rec. Doc. No. 1-1, p.4.

[17]Rec. Doc. No. 1-1, p. 4.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Michael Glaub's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[18]

New Orleans, Louisiana, this __27th__ day of June, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[18] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.